Farr, J.
This is a proceeding in error brought to reverse a judgment of the court of common pleas of this county and the parties sustain the same relation here as in tl|e court below. On the 17th day of December, 1916, Malinda Guy, the plaintiff in error, filed her petition in the court below seeking to recover from The Tri-State Amusement Company for an alleged violation of Sections 12940 and 12941 of the General Code, which provide that there shall be no denial of privileges at inns and certain other places, to a citizen, by reason of color, except for reasons applicable alike to all citizens regardless of color.
*510 The plaintiff alleges in her petition that on or about the 1st day of August,' 1916, she went into Olympic Theater in the City of Steubenville in company with one Isaac E. Stady, a colored man and a theological student of Wilberforce University, she herself being a colored woman. She further alleges in her petition that she purchased two tickets at the price of ten cents each; that she surrendered the tickets to the person at the entrance, passed into the theater, and was seated in the fifth row, the second seat in, in the center tier of seats; that the usher approached her and requested her to abandon her seat and be seated on the right-hand side or in the right-hand tier of seats in said theater.
It is further alleged in the petition that she left said theater surrendering her tickets at the window where she had received them. To this petition an answer is filed by the defendant company, the defendant in error here, stating or admitting that it had rules and regulations providing for the conduct of people within said theater and that it was the duty of its usher or ushers to show people to their seats in said theater, but denying that there had been any •discrimination against Malinda Guy or Isaac E. Stady by reason of their color. The cause came on to tie heard and was tried to a jury. There was a verdict for the defendant and judgment upon the verdict, to which error is prosecuted in this court.
As above stated the action below is predicated on Sections 12940 and 12941, of the General Code. The former section reads as follows: ■
“Whoever, being the proprietor or his employe, keeper or manager of an inn, restaurant, eating *511 house, barber-shop, public conveyance by land or water, theater or other place of public accommodation and amusement, denies to a citizen, except for reasons applicable alike to all citizens and regardless of color or race, the full enjoyment of the accommodations, advantages, facilities or privileges thereof, or, being a person who aids or incites the denial thereof, shall be fined not less than fifty dollars nor more than five hundred dollars or imprisoned not less than thirty days nor more than ninety days, or both.”
And the latter section provides as follows:
“Whoever violates the next preceding section shall also pay not less than fifty dollars nor more than five hundred dollars to the person aggrieved thereby to be recovered in any court of competent jurisdiction in the county where such offense was committed.”
The petition below sought to recover under and by favor of this latter section. Mrs. Guy says that she purchased said tickets for admission on said, evening of August first; entered said theater, surrendered the tickets, went down five rows from' the rear of the theater, and sat down in the second seat in from the aisle' in the central section of seats; that soon after she had taken her seat she looked back and saw her companion, Mr. Stady, conversing with the usher, Mr. Russell, who came to her a few minutes later and asked her in a genteel manner to take a seat on the other side, designating the right-hand side of the theater; that she asked the usher why, and he said again, “Will you kindly take a seat on the right-hand side of the theater?” She again interrogated him to know why, and he *512 said “On account of your color.” This testimony is substantially corroborated by Mr. Stady. He says that he had a conversation with the same usher and was going to sit with his companion, Mrs. Guy; when the usher forbade him to do so, and he then said he had gone to the theater in company with her and he wished to sit with her. The usher said that he could not do so in the center section, and that he must be seated on the right-hand side of the theater. Mrs. Guy then returned to where Mr. Stady was, and .the two left the theater together but later returned in company with a friend, who had some conversation with the usher with reference to the; matter. It is not denied that the usher stated that he had invited the two colored persons to be seated on the right-hand side of the theater on account of their color.
If there were any denial of that fact the record settles it once and' for all at page 36, in the examination of Mr. Russell, who was the usher on that •occasion. He says: “I said, kindly remove to the other side of the house. She said, Why? I said, On account of your color.” So that Mr. Russell admits that the request for the removal to the .right side of the auditorium was because they were colored persons.
It is urged in argument that The Tri-State Amusement Company, operating this theater, had ■the right to make such reasonable rules and regulations as they saw fit to make with reference to the seating of persons in the same, and that they were permitted to make a rule authorizing or requiring their usher to show people to seats within their theater. There can be no question but *513 what such rules would «be permissible under the law of this state. However, it must be noted from said Section 12940 that it is provided that all citizens regardless of color or race shall have the full enjoyment of the accommodations, advantages, facilities or privileges thereof, that is, at inns, theaters, places of amusement and other places ■enumerated in said statute.
The matter of these people being seated within the theater was a privilege and if this section of the General "Code is rightly understood, it is not simply a privilege of seeing the pictures or hearing the music or meeting and greeting their friends but all patrons are entitled to fully enjoy alike all the privileges accorded to patrons within the theater.
It might be contended here that these persons had just as good an opportunity to see the pictures or vaudeville performance, if such there may have been, seated on the right-hand side, as if-they were seated in the center section. However, if these colored people were required to be so seated they would only be allowed partial enjoyment of the privileges of that theater, , because white persons were permitted to occupy the center section; that is to say, colored people could enjoy the privilege of seeing the pictures, they could enjoy the privilege of hearing the music, they might enjoy the privilege of greeting their friends and acquaintances within the building, at the same time they were certainly denied some of the privileges that were given to persons of the white race, because the latter might enjoy the privilege of the center section of seats.
*514 For- instance if two persons of the white race had purchased tickets for a like consideration and seated themselves in -the center section of seats, under the rules and regulations of this theater, they would not have been called upon to have taken seats on th¿ left-hand side or right-hand side. Therefore, these colored people were directed to sit upon the right-hand side of the theater, which was a place set apart for their use, and they were not permitted to sit in other parts of said auditorium. It is urged, and with considerable force in argument, that in Ohio, theater managers have a right to make such reasonable rules and regulations for the conduct and control of people within their theater, as ,may seem to them necessary; however, the provisions of said Section 12940 must be kept in mind wherein it is provided that privileges shall be extended alike to persons of all races. Therefore, no rules or regulations can be made in violation of or that would contravene this section of the statute.
Somewhat helpful is a well-considered'case from this immediate jurisdiction; it is The Youngstown Park & Falls Street Ry. Co. v. Tokus, 4 Ohio Appellate Reports, 276. This was a case where two young colored persons, Tokus and his sister, attended a Sunday school picnic; having purchased ticket's they went upon the floor of the dancing pavilion and after having been there some time they were bidden by the person in charge of the platform, to leave, which they did.
Suit was brought and in passing upon the case it is held;
*515 “A proprietor of a public dancing pavilion who ejects another therefrom, after he had been admitted thereon, on account of his color or race and for no other reason, is liable to pay a penalty under Section 12941, General Code.”
The very section upon which suit is predicated here.
Tokus and his sister were well behaved and orderly colored persons. It was hinted and even suggested that by reason of greater grace of movement on the dancing floor than some of the other dancers, jealousy of persons of the white race was excited, and for that reason their dismissal was brought about.
What are the circumstances in this case? Here was this young theological student and this lady, both persons of good character. Was there any reason why they should be discriminated against? Is it not true that under the provisions of the foregoing sections • of the statute they were discriminated against? To hold otherwise, would be to render these sections as sounding brass. Said sections were passed by our legislature not for an imaginary, but a real purpose. A little more consideration, a little more willing obedience to these laws, on the part of the people of the white race might render some of the problems which have arisen a little less perplexing.
The charge of the court below was clear, concise and explicit. The jury certainly did not comprehend it. The record clearly discloses a violation of these sections of the statute; that the plaintiff in error 'here was entitled to recover under said Section 12941 there can be no question.
*516 It follows, therefore, that by reason of the jury failing to comprehend 'the instructions of the court, that the case must be reversed and remanded for a new trial, which is done accordingly.

Judgment reversed and cause remanded.

Pollock and Metcalfe, JJ., concur. •